UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANAVY L., <br><br>                          Plaintiff, <br><br>v. <br><br>ANDREW SAUL, Commissioner of Social Security, <br><br>                          Defendant. | Case No.: 3:17-cv-01398-JAH-KSC <br><br>**REPORT & RECOMMENDATION** |

      This Report and Recommendation is submitted to the Honorable John A. Houston, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. On July 10, 2017, plaintiff Manavy L. filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (Doc. No. 1.) Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court RECOMMENDS plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion

1

for summary judgment be GRANTED, and Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

## I. PROCEDURAL BACKGROUND

On March 21, 2014, plaintiff filed an application for a period of disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on November 5, 2013. (Certified Administrative Record ("AR") 138-39.) After her application was denied initially and upon reconsideration (AR 54-64, 65-76), plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 91-92). An administrative hearing was held on October 8, 2015. Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE"). (AR 32-53.)

As reflected in his December 21, 2015, hearing decision, the ALJ found plaintiff had not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the ALJ's decision. (AR 20-27.) The ALJ's decision became final on May 26, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found plaintiff did not engage in substantial gainful activity from November 5, 2013, her alleged onset date, through the date of the ALJ's decision. (AR 22.)

At step two, the ALJ found that plaintiff had the following severe impairment: cervical radiculopathy. (*Id.*)

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 25.)

Next, the ALJ determined plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with no more than occasional

2

3:17-cv-01398-JAH-KSC

pushing and pulling with the bilateral upper extremities; no climbing of ladders, ropes, or scaffolds; no more than frequent climbing or ramps, stairs, balancing, and kneeling; and no more than occasional crawling or overhead use of the bilateral upper extremities. (AR 25.)

At step four, the ALJ determined plaintiff was able to perform her past relevant work as a postmaster and mail supervisor and, thusly, he did not proceed to a determination as to whether plaintiff is able to perform other relevant work, at step five. (AR 27.)

## III. DISPUTED ISSUES

The disputed issues plaintiff has raised as the grounds for reversal and remand are as follows:

1. Whether the ALJ failed to properly evaluate the opinions of plaintiff's treating physician (Doc. No. 10, pp. 6-8[1]);

2. Whether the ALJ failed to properly evaluate plaintiff's subjective complaints and credibility (*Id.*, pp. 8-12);

3. Whether the ALJ adequately developed the record in his questioning of the VE (*Id.*, pp. 12-13);[2] and

4. Whether the ALJ erred in finding plaintiff's RFC will allow her to perform her past relevant work (*Id.*, pp. 13-14).

/ /
/ /
/ /

---

[1] When referring to page numbers for documents filed with the Court, the Court uses the page numbering assigned by the Court's ECF system.

[2] Plaintiff's third claim is not enumerated in her brief but is raised in the body of her Motion. (*See* Doc. No. 10 at 12-13.)

3

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V. DISCUSSION

### A. Reversal is not warranted based on the ALJ's alleged failure to properly evaluate the opinion of Plaintiff's treating physician, Dr. Muy.

Plaintiff contends the ALJ erred by failing to provide clear and convincing reasons for rejecting the opinion of Dr. Madineth Muy, which plaintiff contends is clearly supported by the record. (Doc. No. 10, pp. 6-8.)

To reject the uncontradicted opinion of an examining physician, an ALJ must provide "clear and convincing" reasons. Where the examining physician's opinion is contradicted by that of another doctor, as is the case here, the ALJ must provide "specific and legitimate" reasons that are supported by substantial evidence in the record. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 8301-31 (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1041(9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The opinions of Dr. Muy that are at issue are found in the Physical RFC Questionnaire completed on September 15, 2015. (AR 427-31.) Dr. Muy concluded that

plaintiff is unable to sustain even most sedentary work activities, is precluded from even low stress work and has pain "constantly" that interferes with her ability to be attentive and to concentrate. (*Id*. at 428.) In Dr. Muy's assessment, in an eight hour work day plaintiff could only sit less than two hours and could only stand or walk for about two hours. (*Id*. at 429.) She opined that plaintiff could lift less than ten pounds, but only "rarely," and must be able to shift positions at will and take unscheduled breaks. (*Id*. at 429.) Dr. Muy stated that plaintiff could perform postural activities no more than occasionally and that plaintiff had marked limitations in using her right upper extremity for manipulative activities. (*Id*. at 430.) Lastly, Dr. Muy concluded plaintiff would likely miss more than four days of work per month. (*Id*.)

After conducting a thorough summary of the medical record, the ALJ gave Dr. Muy's assessment of plaintiff's physical limitations "minimal to no weight," finding it was not well supported and was inconsistent with the weight of the medical record, which showed improvement after prescribed medical treatment. (AR 26.) In doing so, the ALJ specifically noted plaintiff reported 50% improvement following epidural steroid injections and she no longer had symptoms running down her arms. (AR 26, *citing* AR 295-314.)

Plaintiff cites to three records in support of her argument the record supports Dr. Muy's assessment: 1) an MRI of plaintiff's cervical spine, performed on October 13, 2013 (AR 207-09); 2) records from plaintiff's application for leave under the Family and Medical Leave Act ("FMLA") in December 2013 (AR 217); and 3) notes by Nurse Practitioner Laura Villasenor[3] documenting a visit plaintiff made on August 12, 2014 (AR 336-39). These documents do not, however, show the ALJ erred in his analysis.

The MRI revealed plaintiff had some pathology in the cervical area, but overall the findings were mild. (AR 207-09.) Similarly, the treatment notes by N.P. Villasenor also

---

[3] Plaintiff incorrectly credits the treatment notes from this visit to Dr. Stephen Barkow, however, plaintiff was actually seen that day by N.P. Villasenor. (AR 336.)

5

do not tend to show plaintiff's symptoms are as severe as Dr. Muy's assessment. Plaintiff was seen that day for an injection because pain in her cervical region (which she rated as a 4/10) had returned since her last injection. (AR 336.) She reported the prior injection had reduced her overall pain about 50%, and she was able to sleep and sit easier. (*Id.*) N.P. Villasenor's examination of plaintiff's cervical area reflected mild limitations in lateral flexion, flexion, extension and rotation. (AR 337.)

As for the FMLA records, plaintiff states she was granted a leave of absence from work under the FMLA because "*(t)hey* found that '(i)t is medical necessary for the employee to be absent from work during flare ups due to pain and inability to focus with medication.'" (Doc. No. 10, p. 7, *citing* AR 215 (emphasis added).) This statement is misleading in that it implies the cited document reflects a finding by the authority reviewing her application for leave. In fact, the document cited to is an assessment that was performed by Dr. Muy in support of plaintiff's application for leave and the opinion quoted is that of Dr. Muy. (AR 215.) Furthermore, Dr. Muy's opinion at that time was that plaintiff was incapacitated for a limited period of time, from November 5 to December 31, 2013, not that her symptoms are so severe that she is permanently precluded from working. (*Id.*)

In looking at the whole record, it is clear the ALJ provided legally sufficient reasons for rejecting Dr. Muy's conclusions about plaintiff's physical limitations, which are inconsistent with the totality of the objective medical evidence. (AR 26.) *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings") (citation omitted).

The ALJ specifically noted the aforementioned MRI, performed on October 13, 2013, detected largely "mild" abnormalities, with no significant neural foramen narrowing. (AR 23, 26, 207-08.) *See Matney v. Sullivan*, 981 F.2d 1016, 1019-20 (9th

6

3:17-cv-01398-JAH-KSC

Cir. 1992) (the ALJ properly rejected treating physicians' opinions by noting that the claimant had no evidence of significant motor loss, muscle weakness, or sensory or reflex loss). He also noted that in November 2013, during an examination by K. Anthony Kim, M.D., plaintiff had full 5/5 strength, normal sensation, and normal reflexes. (AR 23, 245.) Dr. Kim observed plaintiff appeared to have a radiculitis of the left C5 and C6 nerve, a corresponding very mild C5-6 disc bulge, and a little more pronounced C6-7 disc bulge with irregularities in the left lateral recess, and opined that a transformal injection at left C5-6 and C6-7 would be therapeutic. (AR 245.)

Moreover, as the Commissioner posits, while Dr. Muy concluded plaintiff was largely unable to perform exertional or manipulative activities, the ALJ noted Stephen Barkow, M.D. and N.P. Villasenor's treatment records indicate plaintiff rated her pain as 5/10 during her initial consultation in December 2013, but subsequently reported improvement with epidural steroid injections. (AR 23-24, 224, 227-232, 297, 301, 304, 336, 340.)  The ALJ also remarked that on examination of plaintiff's cervical spine, these medical professionals found "no abnormal curvature, no skin changes or swelling, no signs of meningismus, left positive Spurling's, with radiation into the left extremity. While there was trapezius spasm, left greater than right, examination of the upper extremities was normal, without swelling, color change, temperature change or mottling." (AR 23, 225, 298, 302, 305, 333, 337, 341.) The ALJ further observed plaintiff's treatment records indicate she had normal manual strength of the bilateral upper extremities, "strong and symmetric" grip strength, and a normal lumbar spine exam, with negative straight leg raising in the seated position, normal gait, and no evidence of muscular atrophy or abnormal movements. (*Id.*)

The ALJ correctly noted Dr. Muy's conclusions about plaintiff's physical limitations were inconsistent with the documented improvement in plaintiff's symptoms and physical condition. (AR 26.) *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming the ALJ's rejection of a physician's opinion where the physician's assessed limitations were inconsistent with the claimant's observed improvement and

7

were "not supported by any findings made by any doctor"). The ALJ further noted that Dr. Muy's opinion was also inconsistent with plaintiff's own testimony that she no longer experienced radicular symptoms in her upper extremities. (AR 26, 40-41.) *See Koch v. Berryhill*, 720 F. App'x 361, 363 (9th Cir. 2017) (unpub.) (the ALJ properly rejected a treating physician's opinion where examination findings were "mild" and treatment notes indicated that the claimant "continued to improve").

Additionally, the assessment made by Leonard Naiman, M.D., the State agency physician who reviewed the aforementioned medical evidence, supports the ALJ's discounting of Dr. Muy's opinion. *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). Dr. Naiman noted plaintiff did not claim her symptoms were worsening and concluded that plaintiff could: occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk or sit about 6 hours in an 8 hour workday; and push and/or pull without any limitation other then the limits assigned for lifting and carrying. (AR 69, 71.) He opined she had no postural limitations; could climb ramps and stairs frequently; climb ladders, ropes and scaffolds occasionally; and balance, stoop, kneel, crouch and crawl frequently.[4] (AR 71-72.) He also determined plaintiff did not have any manipulative limitations. (AR 72.) Noting that plaintiff did not have any major neuro or motor deficits at her examination on April 23, 2014, and that she had been on an active treatment program, Dr. Naiman anticipated that by November 5, 2014, plaintiff would have responded to the prescribed treatment program and be able to tolerate at least a light level of activity. (AR 73.) Dr. Naiman's assessment of plaintiff's physical abilities is consistent with the totality of the medical evidence and, thus, the ALJ's assignment of

---

[4] Dr. Naiman expounded on the limitation assigned for crawling, stating that plaintiff's ability to do so was on the low end of frequent. (AR 72.)

"substantial weight" to Dr. Naiman's assessment is legally sufficient. *See* 20 C.F.R. § 404.1527(c)(4).

### B. Reversal is not warranted based on the ALJ's alleged failure to properly evaluate plaintiff's subjective complaints and credibility.

Plaintiff next contends the ALJ erred in assessing her credibility and in failing to fully accept her testimony regarding her subjective symptoms. (Doc. No. 10, pp. 8-12.)

The law is well established in this Circuit that, where the claimant has produced objective medical evidence of an impairment or impairments which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). Since the ALJ did not make an express finding of malingering or cite any evidence of malingering, the issue before the Court is whether the provided reasons for his adverse credibility determination satisfy the standard set forth above. *See Vasquez*, 572 F.3d at 592 ("clear and convincing' standard applies where ALJ did not cite any evidence of malingering); *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

The ALJ found that while plaintiff's physical impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of these symptoms are not entirely credible. (AR 26.) In evaluating her credibility, the ALJ noted that although plaintiff testified she suffers from chronic pain 24 hours per day, 7 days per week, she also goes to the gym 4-5 times per

9

week, does yoga 6-7 times per week, and is "constantly stretching." (*Id.*) The ALJ remarked that while plaintiff's level of physical activity is not controlling, it is generally inconsistent with disability because it indicates the capacity required to perform work activity. (*Id.*)

The ALJ also found plaintiff's credibility was undermined because the weight of the objective medical evidence does not support her alleged degree of limitation. (AR 26-27.) On this point, he commented on the fact plaintiff is able to manage her pain with the occasional use of non-narcotic medications (Aleve and Flexeril), noting the need to regularly take narcotic medication is expected at the level of pain alleged. (AR 26.) He further noted plaintiff's treating physicians provided limited and conservative treatment, which is inconsistent with what would be expected if they had observed the level of severity of symptoms alleged by plaintiff. (AR 27.) The State agency physician's findings as to plaintiff's physical limitations, summarized in the prior section, also support the ALJ's credibility determination.

Plaintiff's documented level of activity is a clear and convincing basis for the ALJ's finding that plaintiff's allegations of disabling pain and physical limitations are not fully credible. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Tommasetti*, 533 F.3d at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility," including "the claimant's daily activities"). Plaintiff's admitted capacity to exercise at the gym four to five times per week and take gentle yoga classes six to seven days per week, as a means of managing her pain, supports the ALJ's finding that plaintiff's claim of constant disabling pain is not fully credible. (AR 39, 45); *See also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (the claimant's daily activities may be grounds for rejecting "claims of a totally debilitating impairment," even if the daily activities suggest some difficulty in the claimant's functioning); *Thomas*, 278 F.3d at 959 (the ALJ properly rejected the claimant's allegations of disabling pain by citing her ability to perform various household chores, such as cooking, laundry, washing dishes, and shopping); *see also Trisdale v. Astrue*, 334 F. App'x 85, 87 (9th Cir. 2009) (unpub.) (the ALJ properly

10

3:17-cv-01398-JAH-KSC

rejected claims of disabling pain and fatigue, in part, by noting that the claimant "regularly takes yoga and exercise classes").

Second, the ALJ's finding the objective medical evidence does not corroborate plaintiff's statements regarding the severity of her pain and physical limitations is also well-supported by the record. *See* 20 C.F.R. § 404.1529(c)(2); *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects"). As discussed in the previous section, as well as by the ALJ, the MRI performed on October 13, 2013, showed some pathology in the cervical region, but overall the findings were predominately mild. (AR 26, 207-08.) Additionally, Dr. Kim, Dr. Barkow and N.P. Villasenor's treatment records, which were considered by the ALJ, indicate plaintiff had normal manual strength of the bilateral upper extremities, "strong and symmetric" grip strength, and a normal lumbar spine exam, with negative straight leg raising in the seated position, normal gait, no evidence of muscular atrophy or abnormal movements, "no abnormal curvature, no skin changes or swelling, no signs of meningismus, left positive Spurling's, with radiation into the left extremity." (AR 23, 225, 245, 298, 302, 305, 333, 337, 341.)

Furthermore, there is no error with respect to the ALJ's finding that plaintiff's treatment history was inconsistent with her allegations of disabling pain and physical limitations. (AR 23-27.) *See* 20 C.F.R. §§404.1529(c)(3)(iv), (v). Plaintiff's treatment consisted primarily of conservative measures, such as over-the-counter pain medication, yoga and stretching, and periodic epidural steroid injections, all of which she reported helped to alleviate her symptoms. (AR 39-41, 45, 227-32, 299, 303, 306, 334-35, 338, 342.) *See Tommasetti*, 533 F.3d at 1040 (the ALJ properly rejected the claimant's allegations of disabling pain where he responded favorably to conservative treatment, including physical therapy and anti-inflammatory medication); *see also Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (unpub.) (the ALJ properly discredited the

claimant's subjective symptom testimony by citing her "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"). As discussed earlier, plaintiff reported that epidural injections were "very helpful" and substantially improved her pain and functioning. (AR 297, 301, 304, 332, 336, 340) and she testified that yoga and stretching relieved her pain and radicular symptoms (AR 39-41). *See Stewart v. Colvin*, 674 F. App'x 634, 636 (9th Cir. 2017) (unpub.) (the ALJ properly discounted the claimant's symptom testimony by noting the claimant's improvement following his epidural injections and physical therapy treatment).

### C. Reversal is not warranted based on the ALJ's alleged failure develop the record upon examination of the VE.

Plaintiff next argues the ALJ erred because neither of the two hypotheticals he presented to the VE were predicated on the physical limitations assigned by Dr. Muy. (Doc. No. 10, p. 13.)

As discussed above, the ALJ properly rejected Dr. Muy's conclusions about the extent of plaintiff's physical limitations and sufficiently discounted plaintiff's subjective complaints of limitations beyond those set forth in the ALJ's RFC assessment. The ALJ did not owe a duty, therefore, to propose a hypothetical based on this discounted evidence as a vocational expert's testimony has no evidentiary value if the record does not support the underlying assumptions in the hypothetical question posed. *See Magallanes,* 881 F.2d at 756 ("The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence'") (*citation omitted*); *Batson*, 359 F.3d at 1197 (an ALJ is not required to accept VE testimony based upon properly discounted medical opinion evidence); *Rollins,* 261 F.3d at 857 ("the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove" because the ALJ's findings were supported by substantial evidence).

If the ALJ poses a hypothetical question to the vocational expert that captures all of the claimant's established functional limitations, the vocational expert's responsive

12

3:17-cv-01398-JAH-KSC

claimant's subjective symptom testimony by citing her "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"). As discussed earlier, plaintiff reported that epidural injections were "very helpful" and substantially improved her pain and functioning. (AR 297, 301, 304, 332, 336, 340) and she testified that yoga and stretching relieved her pain and radicular symptoms (AR 39-41). *See Stewart v. Colvin*, 674 F. App'x 634, 636 (9th Cir. 2017) (unpub.) (the ALJ properly discounted the claimant's symptom testimony by noting the claimant's improvement following his epidural injections and physical therapy treatment).

### C. Reversal is not warranted based on the ALJ's alleged failure develop the record upon examination of the VE.

Plaintiff next argues the ALJ erred because neither of the two hypotheticals he presented to the VE were predicated on the physical limitations assigned by Dr. Muy. (Doc. No. 10, p. 13.)

As discussed above, the ALJ properly rejected Dr. Muy's conclusions about the extent of plaintiff's physical limitations and sufficiently discounted plaintiff's subjective complaints of limitations beyond those set forth in the ALJ's RFC assessment. The ALJ did not owe a duty, therefore, to propose a hypothetical based on this discounted evidence as a vocational expert's testimony has no evidentiary value if the record does not support the underlying assumptions in the hypothetical question posed. *See Magallanes,* 881 F.2d at 756 ("The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence'") (*citation omitted*); *Batson*, 359 F.3d at 1197 (an ALJ is not required to accept VE testimony based upon properly discounted medical opinion evidence); *Rollins,* 261 F.3d at 857 ("the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove" because the ALJ's findings were supported by substantial evidence).

If the ALJ poses a hypothetical question to the vocational expert that captures all of the claimant's established functional limitations, the vocational expert's responsive

12

3:17-cv-01398-JAH-KSC

claimant's subjective symptom testimony by citing her "conservative treatment plan, which consisted primarily of minimal medication, limited injections, physical therapy, and gentle exercise"). As discussed earlier, plaintiff reported that epidural injections were "very helpful" and substantially improved her pain and functioning. (AR 297, 301, 304, 332, 336, 340) and she testified that yoga and stretching relieved her pain and radicular symptoms (AR 39-41). *See Stewart v. Colvin*, 674 F. App'x 634, 636 (9th Cir. 2017) (unpub.) (the ALJ properly discounted the claimant's symptom testimony by noting the claimant's improvement following his epidural injections and physical therapy treatment).

### C. Reversal is not warranted based on the ALJ's alleged failure develop the record upon examination of the VE.

Plaintiff next argues the ALJ erred because neither of the two hypotheticals he presented to the VE were predicated on the physical limitations assigned by Dr. Muy. (Doc. No. 10, p. 13.)

As discussed above, the ALJ properly rejected Dr. Muy's conclusions about the extent of plaintiff's physical limitations and sufficiently discounted plaintiff's subjective complaints of limitations beyond those set forth in the ALJ's RFC assessment. The ALJ did not owe a duty, therefore, to propose a hypothetical based on this discounted evidence as a vocational expert's testimony has no evidentiary value if the record does not support the underlying assumptions in the hypothetical question posed. *See Magallanes,* 881 F.2d at 756 ("The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence'") (*citation omitted*); *Batson*, 359 F.3d at 1197 (an ALJ is not required to accept VE testimony based upon properly discounted medical opinion evidence); *Rollins,* 261 F.3d at 857 ("the ALJ did not err in omitting the other limitations that [the claimant] had claimed, but had failed to prove" because the ALJ's findings were supported by substantial evidence).

If the ALJ poses a hypothetical question to the vocational expert that captures all of the claimant's established functional limitations, the vocational expert's responsive

12

3:17-cv-01398-JAH-KSC

testimony about plaintiff's ability to perform her past relevant work is substantial evidence. *See Bayliss,* 427 F.3d at 1217; *Thomas,* 278 F.3d at 956. Here, the ALJ posited two hypotheticals to the VE. The first one assumed a younger individual with greater than a high school education and plaintiff's work history. (AR 48.) The VE was asked to assume this individual could perform work at a light exertional level, limited to occasional pushing, pulling kneeling, crawling and overhead bilateral use of the upper extremities, no climbing of ropes, ladders or scaffolds, and frequent climbing of stairs and ramps, as well as of balancing. (*Id*.) The VE opined an individual with these limitations could perform plaintiff's prior work as a postmaster, as well as a mail supervisor. (AR 48-49.) The second hypothetical assumed an individual with the same limitations, except she would be limited to sedentary work. (AR 49.) The VE testified that this individual could also perform plaintiff's prior work as a postmaster, but could not work as a mail supervisor. (*Id*.) These hypotheticals capture all of plaintiff's established functional limitations and, thus, are legally sufficient.

### D. Reversal is not warranted based on the ALJ's alleged error in finding plaintiff's RFC will allow her to perform her past relevant work.

Lastly, plaintiff contends the ALJ's RFC assessment is deficient because it is inconsistent with Dr. Muy's RFC assessment and the medical evidence in the record. (Doc. No. 10, p. 14.) The evidence plaintiff cites in support of this assertion is derived from plaintiff's testimony, specifically her testimony that: 1) starting in 2013 she could no longer raise her arms (*Id*., *citing* AR 40); 2) she opted to treat her symptoms by doing yoga, as opposed to taking medication (*Id*., *citing* AR 45); and 3) she was still unable to complete a workday in her prior occupation despite being able to set her own pace and work limitations (*Id*. *citing* AR 37.)

As discussed previously, the ALJ properly discounted Dr. Muy's assessment of plaintiff's physical limitations because it is inconsistent with the totality of the medical evidence. Furthermore, plaintiff's description of her testimony regarding her symptoms in

13

2013, when she was still employed in her prior occupation omits the fact plaintiff also testified her symptoms have improved since that time.[5] (AR 40-41.)

The ALJ's RFC is consistent with the limitations assigned by the State agency physician, which is consistent with the totality of the medical evidence. Dr. Naiman's opinion, based on his review of the medical record, constitutes substantial evidence upon which the ALJ could properly rely for purposes of his RFC determination. *See Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

## VI. CONCLUSION

In sum, the four arguments raised in plaintiff's Motion are essentially a request for this Court to reinterpret the evidence and reject the ALJ's interpretation in favor of plaintiff's preferred result. Ninth Circuit precedent is well-established that evaluating

---

[5] During the hearing held on October 8, 2015, plaintiff provided the following testimony:

| | | |
|---|---|---|
| Q: | Okay. Do you ever have any symptoms going down your arms? | |
| A: | I did. | |
| Q: | You did at one time? | |
| A: | I did in early 2013. I woke up one day, but I still have to go to work as a postmaster. It's just like I couldn't raise my arm, tingling down. I went to work and not even a whole day, a few hours. After the telecon's over, I had to go to the doctor and they put me off like a week or so. And of course, they gave me lots of medications. | |
| Q: | Did you have any other episodes like that? | |
| A: | Lately, after I start doing yoga, it help. I don't really have that many episodes with the tingling down the arm. So the stretching, constant stretching yoga is – | |
| Q: | It's good for you. | |
| A: | It's helped. But if I skip it -- | |
| Q: | So this one time where you had the symptoms down your arm, that was before you even left the post office? | |
| A: | Right. That was when I was still working. | |
| Q: | And then you haven't really had those symptoms since? | |
| A: | Not as bad. | |
| Q: | Well, but you have had them, I guess? | |
| A: | Yes. | |
| Q: | If you're saying not as bad, was it like frequently, I mean like once or twice? | |
| A: | I was only once or twice, your Honor. | |

14

conflicts in the evidence is the sole province of the ALJ, and this Court is obliged to uphold the ALJ's reasonable interpretation of this evidence, even if plaintiff's preferred interpretation is valid. *See Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) ("The court must consider the record as a whole and weigh 'both the evidence that supports and the evidence that detracts from the ALJ's' factual conclusions" and "'[i]f the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner") (citation omitted); *Magallanes*, 881 F.2d at 750 ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony"; "[t]he ALJ is likewise responsible for resolving ambiguities") (citation omitted); *Winans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (a reviewing court "may not reweigh the evidence").

For the reasons set forth above, plaintiff's Motion for Summary Judgment should be **DENIED** and defendant's cross-motion for summary judgment should be **GRANTED**.

This report and recommendation is submitted to the Honorable John A. Houston, United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before **December 4, 2019**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **December 11, 2019**. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 19, 2019

Hon. Karen S. Crawford
United States Magistrate Judge